# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #050

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **17th day of November, 2023** are as follows:

**PER CURIAM:**

2023-B-00284          IN RE:  DAVID BAND, JR.

                         SUSPENSION IMPOSED. SEE PER CURIAM.

                         Hughes, J., dissents and assigns reasons.
                         Genovese, J., dissents and assigns reasons.
                         Crain, J., dissents and assigns reasons.

SUPREME COURT OF LOUISIANA

NO. 2023-B-0284

IN RE: DAVID BAND, JR.

ATTORNEY DISCIPLINARY PROCEEDING

PER CURIAM

This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, David Band, Jr., an attorney licensed to practice law in Louisiana.

**UNDERLYING FACTS**

In June 2019, Mortimer Bishop sold immovable property to Christine Bowers. Thereafter, Mr. Bishop refused to vacate the premises, claiming that Ms. Bowers had granted him a lifetime usufruct over the property. Ms. Bowers then filed a rule for eviction against Mr. Bishop, and Mr. Bishop sued Ms. Bowers to rescind the sale based on theories of lesion and fraud. Mr. Bishop was represented by respondent in the litigation. Ms. Bowers was initially represented by attorney Eric Person. In August 2019, Ms. Bowers discharged Mr. Person and retained attorney F. Evans Schmidt to represent her.

During the litigation, respondent contacted Ms. Bowers multiple times to discuss the legal matter. These communications were through social media, email, and by telephone, and were made without the authorization of Ms. Bowers' counsel. Some of the communications were also peculiar. In one message, respondent requested that Ms. Bowers "wear something low cut."

In November 2020, Ms. Bowers filed a complaint against respondent with the ODC. In his written response to the complaint, respondent suggested that he had contacted Ms. Bowers during time periods when he believed she was not represented by counsel. However, in one of his messages to Ms. Bowers via Facebook, respondent stated that he knew she had an attorney. Moreover, in his sworn statement to the ODC, respondent testified that he communicated directly with Ms. Bowers even though she was represented by Mr. Schmidt because he was having trouble contacting Mr. Schmidt.

## DISCIPLINARY PROCEEDINGS

In November 2021, the ODC filed formal charges against respondent, alleging that his conduct as set forth above violated Rules 4.2(a) (communications with persons represented by counsel) and 8.1(a) (knowingly making a false statement of material fact in connection with a disciplinary matter) of the Rules of Professional Conduct.

Respondent filed an answer to the formal charges, stating that he did not violate the rules as charged because he had a reasonable belief Ms. Bowers did not have an attorney at the time he communicated with her.

In light of respondent's answer, the matter proceeded to a formal hearing on the merits.

### *Formal Hearing*

The hearing committee conducted the formal hearing on April 18, 2022. The ODC introduced documentary evidence, including email and voice messages from respondent to Ms. Bowers. The ODC called Ms. Bowers and her attorney, Mr. Schmidt, to testify before the committee. Respondent testified on his own behalf

and on cross-examination by the ODC, and he called his assistant to testify before the committee.

### TESTIMONY OF CHRISTINE BOWERS

Ms. Bowers testified that she was represented by counsel during the entire time relevant to these proceedings, and at no time was she without legal representation. Nevertheless, she received several email messages from respondent discussing the merits of the case involving Mr. Bishop. The email messages included a vulgar misspelling of the word "usufruct" and suggested that Ms. Bowers assist Mr. Bishop in finding a new place to live by "wear[ing] something low cut." Ms. Bowers testified that the request made her feel "like a piece of trash." Ms. Bowers also identified Facebook messages and a friend request that respondent sent to her Facebook account during the time she was represented by counsel. She also testified that respondent called her directly after a hearing in which Mr. Bishop was evicted, congratulating her and discussing further action in the matter.

### TESTIMONY OF F. EVANS SCHMIDT

Mr. Schmidt testified that he represented Ms. Bowers in the property matter from August 2019 through July 2020. Mr. Schmidt told respondent from the beginning that he was representing Ms. Bowers, and testified that he spoke with respondent on several occasions in late 2019 and early 2020 to discuss discovery issues. Mr. Schmidt confirmed that he did not authorize any direct communication between respondent and Ms. Bowers.

TESTIMONY OF RESPONDENT

Respondent admitted he knows an attorney cannot directly contact an opposing party who is represented by counsel, and acknowledged that he never received authorization from Mr. Schmidt to contact Ms. Bowers directly. He admitted sending the email messages and the Facebook message and friend request to Ms. Bowers, but testified that he was confused and thought Ms. Bowers was "in between counsel" during the times these communications occurred. He also maintained that he was just trying to contact Ms. Bowers "about working something out with whoever was representing her." Regarding his suggestion to Ms. Bowers to "wear something low cut," respondent testified that the comment "was supposed to be a joke."

TESTIMONY OF CANDACE HUGHES

Ms. Hughes has been working for respondent since 2016 assisting him around his office. Although she had no personal knowledge of when Ms. Bowers retained counsel in the property matter, Ms. Hughes testified that there was "a discussion in the office" and that respondent "thought that [Ms. Bowers] did not have a lawyer there for a minute."

*Hearing Committee Report*

After considering the evidence and testimony presented at the hearing, the hearing committee made factual findings, including the following:

1. The ODC proved by clear and convincing evidence that respondent was aware at all times that Ms. Bowers was represented by counsel in her dispute with Mr. Bishop.

2. The ODC proved by clear and convincing evidence that respondent directly communicated with Ms. Bowers about the ongoing litigation by sending her

4

email messages, Facebook messages, and a Facebook friend request and by telephoning her directly when he knew that she was represented by counsel.

3. The ODC proved by clear and convincing evidence that respondent did not obtain the consent of Ms. Bowers' counsel before directly communicating with her about the ongoing litigation.

4. The ODC proved by clear and convincing evidence that respondent knowingly submitted false statements of material fact to the ODC in connection with this disciplinary matter.

Based upon these findings, the committee determined that respondent violated Rules 4.2(a) and 8.1(a) of the Rules of Professional Conduct, as charged in the formal charges.

The committee determined that respondent intentionally violated duties owed to the legal system and the legal profession. His actions caused both actual and potential harm. Ms. Bowers was highly offended by the vulgar and suggestive nature of several of respondent's messages. She also could have been harmed in the underlying litigation by respondent's suggestions that she "help" his client find a new place to live. In addition, respondent's continued misrepresentations to the ODC required the agency to expend additional resources in the investigation and prosecution of the case. Relying on the ABA's *Standards for Imposing Lawyer Sanctions*, the committee determined the applicable baseline sanction is suspension.

The committee found the following aggravating factors are present in this matter: a dishonest or selfish motive, a pattern of misconduct, multiple offenses, and substantial experience in the practice of law (admitted 1970). In mitigation, the committee found that respondent has no prior disciplinary record.

Considering these circumstances, and the prior jurisprudence of this court in similar cases, the committee recommended that respondent be suspended from the practice of law for six months. The committee also recommended that respondent

be ordered to submit to an examination by a licensed mental health professional,[1] and that he be assessed with the costs and expenses of these proceedings.

Both respondent and the ODC filed objections to the hearing committee's report.

*Disciplinary Board Recommendation*

After review, the disciplinary board determined that the hearing committee's factual findings are not manifestly erroneous and adopted same. Based on these factual findings, the board agreed respondent's conduct violated the Rules of Professional Conduct as alleged in the formal charges.

The board agreed with the committee that respondent violated duties owed to the legal system and the legal profession. His actions were knowing and intentional, and caused actual and potential harm. Based on the ABA's *Standards for Imposing Lawyer Sanctions*, the board determined the baseline sanction ranges from reprimand to suspension.

The board found the following aggravating factors are present: a dishonest or selfish motive, multiple offenses, submission of false evidence, false statements, or other deceptive practices during the disciplinary process, refusal to acknowledge the wrongful nature of the conduct, and substantial experience in the practice of law. Like the committee, the board found the only mitigating factor present is the absence of a prior disciplinary record.

Considering these findings, and the court's prior jurisprudence discussing similar misconduct, the board recommended respondent be suspended from the

---

[1] The committee noted that throughout the hearing, respondent did not appear to understand or appreciate the charges against him or the nature of the proceedings. He ultimately admitted that he contacted Ms. Bowers while he knew she was represented by counsel, but he steadfastly refused to accept – or was unable to understand – that his actions were not justified by his belief that his client was "wronged" by Ms. Bowers. The committee felt this may indicate "a *potential* lack of mental clarity sufficient to practice law." [Emphasis in original.] Accordingly, the committee recommended that respondent be required to undergo a mental health evaluation.

practice of law for six months. The board further recommended that respondent be assessed with the costs and expenses of this matter.

With regard to the committee's recommendation that respondent submit to a mental health evaluation, the board agreed that respondent still does not appear to grasp the wrongfulness of his conduct and has continued to focus on the underlying litigation matter (which has been concluded). Furthermore, although respondent represented to the board that he had previously undergone neuropsychological testing for "memory problems," and that the results were normal for someone his age, he failed to submit a copy of the testing report to the board to support these assertions. Accordingly, the board recommended that before respondent may be reinstated from his suspension, he must meet the requirements prescribed by Supreme Court Rule XIX as well as the following additional conditions:

Within ninety days of the finality of the court's judgment imposing sanction, respondent shall consult with the Judges and Lawyers Assistance Program ("JLAP") and undergo, at his cost, an evaluation by a neuropsychologist or other mental health professional designated by JLAP to determine his competency to continue to practice law. A report of the evaluation shall be promptly submitted by the evaluator to JLAP, and provided by JLAP to the ODC and respondent within five days of receipt of the report. After receipt of the evaluator's report, the ODC shall take any further action it deems appropriate under the circumstances.

Respondent filed an objection to the board's recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).

## DISCUSSION

Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an

7

independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. *In re: Banks*, 09-1212 (La. 10/2/09), 18 So. 3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. *See In re: Caulfield*, 96-1401 (La. 11/25/96), 683 So. 2d 714; *In re: Pardue*, 93-2865 (La. 3/11/94), 633 So. 2d 150.

The underlying facts of this matter are not seriously in dispute. Respondent communicated with a person known to be represented by counsel and made a false statement to the ODC during its investigation. This conduct violates the Rules of Professional Conduct as charged in the formal charges.

Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent's actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. *Louisiana State Bar Ass'n v. Reis*, 513 So. 2d 1173 (La. 1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. *Louisiana State Bar Ass'n v. Whittington*, 459 So. 2d 520 (La. 1984).

Respondent violated duties owed to the legal system and the legal profession. His actions were knowing and intentional, and caused actual and potential harm. The applicable baseline sanction ranges from reprimand to suspension. The aggravating and mitigating factors found by the disciplinary board are supported by the record.

Turning to the issue of sanction, a period of actual suspension is warranted for respondent's knowing and intentional communications with Ms. Bowers without the

consent of her counsel. Furthermore, respondent made false statements of material fact to the ODC during its investigation, thereby compounding the misconduct. Nevertheless, we find it significant that respondent has no prior disciplinary record in more than fifty years of practicing law. Under these circumstances, it is appropriate to defer all but thirty days of the six-month suspension recommended by the board.

Regarding the recommendation of the committee and the board that respondent be required to submit to an examination by a licensed mental health care professional, we agree that respondent behaved in a bizarre manner towards Ms. Bowers, yet seems unable to understand why she was offended by his remarks. Respondent's persistent focus on the underlying property matter during these proceedings is also somewhat puzzling. To resolve any concerns about respondent's mental state, we will require that before he may be reinstated from his suspension, he must consult with JLAP and undergo, at his cost, an evaluation by a neuropsychologist or other mental health professional designated by JLAP to determine his competency to continue to practice law. A report of the evaluation shall be promptly submitted by the evaluator to JLAP, and provided by JLAP to the ODC and respondent within five days of receipt of the report. After receipt of the evaluator's report, the ODC shall take any further action it deems appropriate under the circumstances.

**DECREE**

Upon review of the findings and recommendations of the hearing committee and the disciplinary board, and considering the record, briefs, and oral argument, it is ordered that David Band, Jr., Louisiana Bar Roll number 2718, be and he hereby is suspended from the practice of law for a period of six months, will all but thirty days deferred. It is further ordered that before respondent may be reinstated from

9

his suspension, he must consult with the Judges and Lawyers Assistance Program and undergo, at his cost, an evaluation by a neuropsychologist or other mental health professional designated by JLAP to determine his competency to continue to practice law.  All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

# SUPREME COURT OF LOUISIANA

## No. 2023-B-00284

## IN RE: DAVID BAND, JR.

Attorney Disciplinary Proceeding

 **Hughes, J., dissents.**

Respectfully, I believe the discipline imposed is overly onerous and therefore dissent.

**SUPREME COURT OF LOUISIANA**

**No. 2023-B-00284**

**IN RE:  DAVID BAND, JR.**

Attorney Disciplinary Proceeding

**GENOVESE, J., dissents and assigns reasons.**

I dissent, finding the discipline too lenient.

# SUPREME COURT OF LOUISIANA

## No. 2023-B-00284

## IN RE:  DAVID BAND, JR.

Attorney Disciplinary Proceeding

**CRAIN, J., dissents and assigns reasons.**

I dissent, finding the discipline too lenient.